NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PATRICK L. LARGIE, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 10-cv-05533 (DMC) (MF) |
| TCBA WATSON RICE, LLP, TONDAH CONSULTING GROUP, INC., THOMPSON, COBB, BAZILIO AND ASSOCIATES, P.C., BENNIE HADNOTT & CPA P.C., BENNIE HADNOTT 7 CO., P.C., BENNIE HADNOTT (individually), GLENDA HADNOTT (individually) and MARCEVIR BERNARDO (individually), | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon TCBA Watson Rice's ("Defendant") Motion to Dismiss Patrick L. Largie's ("Plaintiff") Complaint, or in the alternative, for Partial Summary Judgment. (Feb. 18, 2011, ECF No. 10). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's Motion is **granted.**

## I.    BACKGROUND[1]

TCBA Watson Rice is a certified public accounting and consulting firm. Thirty professionals

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective moving papers.

and a staff of one hundred work at Watson Rice. Bennie Hadnott ("Hadnott") is the Managing Partner of the firm. In December 1997, Watson Rice hired Plaintiff as a tax specialist for its New York office. Plaintiff was subsequently promoted to Director of Tax for the firm and charged with running the firm's tax practice out of its New York office. In April 2001, Plaintiff was elected to a partnership position in Watson Rice. He became one of four equity partners of Watson Rice and thus he owned a 10.5% partnership interest in the firm. The equity breakdown is as follows:

| Bennie Hadnott, CPA, PC | 38% |
|---|---|
| Marcevir Bernado | 41.5% |
| Patrick Largie | 10.5% |
| Thompson, Cobb, Bazilio and Associates, P.C.: | 10% |

Following his promotion, Plaintiff began to actively participate and vote at monthly and annual partnership meetings.

As a partner in the firm, Plaintiff began to consult and advise the partnership on how partners should be compensated. In practice, there were no individual employment agreements for the partners, as they received no salaries. Instead, compensation was agreed to be based on future, partner draws.

Furthermore, as the partner in charge of the firm's tax practice, Plaintiff oversaw the entire tax operation of the firm. Plaintiff supervised and managed tax accountants and staff who worked under him and who answered to him.

Defendant alleges that Plaintiff, as a partner, set his own schedule and appointments. Furthermore, Defendant alleges Plaintiff set his own hours and arrived and left work whenever he pleased. Defendant also alleges that Plaintiff repeatedly failed to come into work on Fridays.

Defendants did not discipline Plaintiff for his behavior because of his elevated status within the firm. On October 8, 2010, Hadnott sent Plaintiff a letter terminating him for cause on the basis that Plaintiff was attributing money from the firm's clients to another firm. Plaintiff argues that he was fired for failing to participate in fraudulent accounting activities at the request of other partners hence why Plaintiff is attempting to bring his claim under Conscientious Employee Protection Act ("CEPA").

## II.      STANDARD OF REVIEW

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

3

## III.  DISCUSSION

Plaintiff claims that at the time of his termination from Defendant, he was an employee and entitled to protection under CEPA. Defendant argues that Plaintiff was in fact not an employee for CEPA purposes, and thus the first count of Plaintiff's Amended Complaint must be dismissed for failure to state a claim. In the First Count of the Amended Complaint, Plaintiff asserts a CEPA claim against Watson Rice, alleging that he was "an employee of Watson Rice and performed services for an under the control and direction of Watson Rice for wages or other remuneration." (Am. Compl. ¶ 47).

In relevant part, CEPA provides that:

> Employee retaliatory action; protected employee actions
> An employee shall not take any retaliatory action against an employee because the employee does any of the following:
> a.  Discloses or threatens or discloses to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care.
> b.  Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law, by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or
> c.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

4

> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Am. 39:19-3. CEPA provides protection for employees from retaliation from employers. Defendant argues that CEPA does not provide protection for the class of people in which Plaintiff is situated, because Plaintiff himself possessed the influence and power to save himself from the behaviors and actions that CEPA seeks to deter. The Court agrees that CEPA does not afford Plaintiff any protection.

### A. THE CLACKMAS TEST IS THE APPROPRIATE STANDARD TO DETERMINE IF PLAINTIFF WAS AN EMPLOYEE FOR THE PURPOSES OF CEPA

In Clackamas Gastroenterology Assocs. v. Wells, 538 U.S. 400 (2003), the Supreme Court, in deciding the who constituted an employee under the Americans with Disabilities Act, put forth a non-exhaustive six factor test:

1. Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
2. Whether and, if so, to what extent the organization supervises the individual's work;
3. Whether the individual reports to someone higher in the organization;
4. Whether and, if so, to what extent the individual is able to influence the organization;
5. Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;
6. Whether the individual shares in the profits, losses, and liabilities of the organization.

The Supreme Court of New Jersey adopted the Clackamas six factor test and applied the factors to determine whether an individual is an employee for the purpose of CEPA in Feldman v. Hunterdon Radiological Associates, 901, A.2d, 322, 331 (N.J. 2006). Furthermore, the Feldman court held that the fourth factor of the Clackamas test should guide a court's analysis as to determining whether an individual is an employee for the purposes of CEPA. Id. at 247.

5

B. **PURSUANT TO THE <u>CLACKAMAS</u> TEST, PLAINTIFF IS NOT AN EMPLOYEE FOR THE PURPOSES OF THE CEPA**

The application of the <u>Clackamas</u> test in this present situation turns upon the fourth factor of test where this Court must decide the extent to which Plaintiff was able to influence the dealings of Watson Rice. Applying the facts of the relationship between Plaintiff and Watson Rice, it is apparent that Plaintiff possessed the ability to influence the dealings and activities of Watson Rice. First, as an equity partner, Plaintiff enjoyed the ability to actively participate in helping structure the compensation packages for partners of Watson Rice. Furthermore, Plaintiff was the sole head of the tax department of Watson Rice where Plaintiff oversaw the activities of accountants and other staff members without having to directly report to a supervisor. Finally, Plaintiff's behavior, specifically in setting his own schedule, is indicative of the privileges enjoyed by an individual who is a partner. Taken in the aggregate, it is apparent that Plaintiff was not an employee for the purposes of the CEPA. In fact, Plaintiff's position as a partner of Watson Rice demonstrates that he is part of the class of people that CEPA attempts to deter from unlawfully firing actual employees. Since Plaintiff is not an employee, the first count of his Complaint must be dismissed. Therefore, Defendant's motion to dismiss must be granted.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **granted**. An appropriate Order accompanies this opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        August 20, 2013
Original:    Clerk's Office
cc:          Hon. Joseph A. Dickson, U.S.M.J.
             All Counsel of Record